IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN DAVIS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 22-2468 |
| | : | |
| DIRECT SCREENING | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                          January 30, 2024

Having a common name carries the risk of occasional mix-ups. Ryan Davis's misfortune came when he applied for a job and later found out that he didn't get it because the background check said that Ryan Davis was a convicted sex offender. It was some other Ryan Davis with the exact same birthday. Mr. Davis — the first Mr. Davis — wants to hold the background check company accountable under the Fair Credit Reporting Act, which requires such companies to follow reasonable procedures to ensure the accuracy of their reports. The background check company says that Mr. Davis's case is dead on arrival because the disputed report was neither inaccurate nor misleading. There really is another Ryan Davis with the same birthday who really is a sex offender. And the report specifically warned of the potential for confusion for those with common names. On this summary judgment record, the company is correct. There may be avenues to sustain "mistaken identity" claims under FCRA's § 1681e(b), but none are open here. We grant summary judgment in favor of defendant.

**I.      Background**

Mr. Davis — full name Ryan Ellis Davis — is a local man who applied for a job with a plumbing company. DI 1 ¶¶ 2, 11; DI 22-2 ¶¶ 18-20, 33-34. The plumbing company required a background check, and so it ordered one from Direct Screening. DI 22-2 ¶¶ 14-16. The plumbing company provided Direct Screening with Mr. Davis's full name and date of birth.

1

*Id.* ¶ 17.

Direct Screening created a report on Mr. Davis and sent it back to the plumbing company. *Id.* ¶ 23. Under the heading "subject's search details," the report states the following: a search date of March 9, 2022; the name Ryan Ellis Davis; Mr. Davis's correct date of birth; and "self check" as the "reason." DI 21-7 at 2 (ECF). The parties agree that this was the information that the plumbing company had given to Direct Screening. DI 22-2 ¶¶ 18-22. Under the next heading, entitled "Davis, Ryan" (with no middle name), the report again states a correct date of birth, a gender of "male," a race of "white," and an address of ", SOUTH ROXA, , IL, 01010,." DI 21-7 at 2-3. The parties agree that this was information that Direct Screening provided back to the plumbing company. DI 22-2 ¶ 23. Contrary to the report, Mr. Davis is not white. *Id.* ¶ 25. The zip code and city were also nonsensical. *Id.*

The report continues by identifying two Philadelphia Court of Common Pleas criminal cases from 1999 described as "sexual abuse of children - photograph or film." DI 21-7 at 2-5 (ECF). Those reported crimes were committed by some other person by the name of Ryan Davis, a white male with the same birthday as our plaintiff Mr. Davis. DI 22-2 ¶¶ 25, 30. On the report, the field "DOB match:" says "YES" and the field "Name match:" says nothing— neither yes nor no. DI 21-7 at 2 (ECF). The report also includes a disclaimer stating, in effect, that the data is as received by the Administrative Office of Pennsylvania Courts (AOPC), and AOPC cannot vouch for its accuracy — in particular, that "AOPC makes no representations regarding the identity of any persons whose names appear in the records. User should verify that information is accurate and current by personally consulting the official record reposing in the court wherein the record is maintained." DI 21-7 at 3 (ECF). There is also another prominent disclaimer at the end of the report, a portion of which is quoted below:

> Information contained in the report is collected from public records as listed in the data coverage area of our website. Users should not assume that the information reflected is a current, complete or accurate criminal record history of the individual. ***Users should closely review each record returned as individuals, especially those with a common name, may return criminal records belonging to other people with the same name and date of birth***. Information returned that is generated as a result of identity theft may be inaccurately associated with the individual who is the subject of the report. . . . Important Notice for all Employers: If you expect to take adverse action as a result of information contained in this report, including but not limited to failure to hire, you must provide the person you searched with a copy of this report along with our contact information and a summary of their rights under the Fair Credit Reporting Act. . . .

*Id.* at 5 (ECF) (emphasis added).

After receiving the report from Direct Screening, the plumbing company denied Mr. Davis's job application and e-mailed him the report. DI 22-2 ¶ 36. Direct Screening did not contact Mr. Davis, nor did Mr. Davis contact Direct Screening. *Id.* ¶ 37-38. Mr. Davis filed this lawsuit. DI 1.

Mr. Davis brought his suit under two provisions of FCRA, 15 U.S.C. §§ 1681e(b) and 1681k(a). *Id.* ¶ 44. He says that Direct Screening's violations of FCRA caused him lost employment opportunities, reputational harm, and emotional distress. *Id.* ¶ 45. For our purposes, Mr. Davis's theory is that Direct Screening failed to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).[1]

Direct Screening moved for summary judgment, arguing that Mr. Davis's § 1681e(b) claim fails as a matter of law because the report was indisputably accurate, and inaccuracy is a

---

[1] In opposing summary judgment, Mr. Davis did not reference § 1681k(a). DI 22-1. At oral argument, counsel for Mr. Davis acknowledged that there was no real avenue under that subsection because, as Direct Screening points out, Mr. Davis does not dispute that the report contained complete and up-to-date public records — they were just the wrong person's records. DI 23 at 5 (ECF).

threshold requirement for a § 1681e(b) claim. DI 21-2 at 7-10. Mr. Davis admits that the criminal records themselves are accurate, but nonetheless contends that the report as a whole creates a triable issue as to whether Direct Screening "follow[ed] reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). DI 22.

## II.      Analysis

Summary judgment is warranted when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We resolve all factual disputes in favor of the non-movant, along with accompanying fair inferences, and then determine whether that record can sustain a jury verdict. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The Third Circuit recently set the stage for a case like this one:

> The FCRA "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (internal quotations and citation omitted). "Congress intended to promote efficiency in the nation's banking system and to protect consumer privacy." *Id.* (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 24 (2001)); 15 U.S.C. § 1681(a). "The FCRA places certain duties on those who furnish information to consumer reporting agencies." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011). For example, § 1681s-2(a)(2) requires furnishers to correct any information they later discover to be inaccurate. Furnishers must also provide consumer reporting agencies ("CRAs") with the "date of delinquency" when an account is placed for collection or charged to profit or loss. 15 U.S.C. § 1681s-2(a)(5)(A). Consumer agencies, for their part, must strive to "assure maximum possible accuracy" in credit reports. 15 U.S.C. § 1681e(b).

*Bibbs v. Trans Union LLC*, 43 F.4th 331, 339-40 (3d Cir. 2022). Section 1681e(b) refers to the "accuracy of report" and states: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." No one contests that

4

Direct Screening is the "consumer reporting agency," Mr. Davis's background check report (DI 21-7) is the "consumer report," and Mr. Davis is "the individual about whom the report relates." The question then is whether, when Direct Screening prepared Mr. Davis's report, it "follow[ed] reasonable procedures to assure maximum possible accuracy of the information concerning" Mr. Davis.

The statute does not say that any particular "consumer report" must itself be inaccurate to be actionable, although presumably inaccurate reports are what cause harm and lead individuals to sue consumer reporting agencies. And proof of inaccuracy would tend to show (but not alone prove) that that agency's procedures were unreasonable. But the Third Circuit is way ahead of us here. "Negligent noncompliance with FCRA § 1681e(b) consists of four elements: '(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.'" *Bibbs*, 43 F.4th at 342 (quoting *Cortez,* 617 F.3d at 708). Direct Screening's motion turns on the first prong, because "[a]n inaccuracy is the threshold requirement for a § 1681e(b) claim." *Id.* (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)).

To assess the presence or absence of the required inaccuracy, we apply a "reasonable reader" standard that comprises sophisticated and unsophisticated creditors alike — "any person (or their assignee) who regularly extends, renews, or continues credit." *Bibbs*, 43 F.4th at 342. "A court applying the reasonable reader standard to determine the accuracy of an entry in a report must make such a determination by reading the entry not in isolation, but rather by reading the report in its entirety. On the other hand, if an entry is inaccurate or ambiguous when read

5

both in isolation and in the entirety of the report, that entry is not accurate under § 1681e(b)." *Id.* And, "even if the information in a credit report 'is technically correct, it may nonetheless be inaccurate if, through omission, it creates a materially misleading impression.'" *Id.* at 343 (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014)).

*Bibbs* not only sets up our analysis, but it also offers an analogous holding. There, the relevant report stated the following about a disputed pay status: "Pay Status:>Accounts 120 Days Past Due Date<" — even though the account was no longer past due. 43 F.4th at 343. Although the quoted phrase could mislead, the report also stated that the account was closed, so it would be clear to a reasonable reader that the pay status was historical and not current. *Id.* Thus, when a report contains technically accurate information that could be potentially misleading — like the pay status entry — the potential confusion to a reasonable reader can be dispelled by additional information or context in the report.

Similarly, here, the presence of a criminal record underneath the heading "Davis, Ryan" is technically accurate but potentially misleading, because although someone named Ryan Davis with the same birthday is a sex offender, it is not our Mr. Davis. But, as in *Bibbs*, the full context of the report renders the criminal record report non-misleading: the criminal record lacks Mr. Davis's middle name; readers are warned that the AOPC makes no representations regarding the identify of Ryan Davis; and readers are specifically warned that "especially [for] those with a common name," criminal records may belong to other people. DI 21-7 at 2-5 (ECF). In other words, the report is exactly what it represents itself to be: the results of a search on the name Ryan Davis with the indicated birthday.

Direct Screening further relies on the Eleventh Circuit's decision in *Erickson v. First Advantage Background Services Corp.*, 981 F.3d 1246, 1248 (11th Cir. 2020), where an aspiring

Little League coach suffered from sharing the same first and last name as a sex offender. . On its way to holding that the disputed report was neither inaccurate nor misleading, the Eleventh Circuit described the report as follows:

> After identifying the sex-offender record that matched Erickson's name, the report stated "This Record is matched by First Name, Last Name **ONLY** and may not belong to your subject. Your further review of the State Sex Offender Website is *required* in order to determine if this is your subject." The report then directed Little League to Pennsylvania's sex-offender data to compare the "demographic data and available photographs," noting that Little League might "conclude that the records do not belong to" Erickson.

*Id.* at 1249 (emphases added). The court viewed Erickson's report as "factually correct" because it "did not wrongfully attribute that record to Erickson." *Id.* at 1252. Rather, a reasonable reader of the *Erickson* report would appreciate that it was a first-and-last-name match only, and would be duly cautioned that it could be a mix-up. *Id.* at 1252-53. In our view, *Erickson* and *Bibbs* operate on similar principles and resolve our question because, just as here, there was no facial inaccuracy and when a reasonable reader considered the whole reports, the clarifying information avoided any misleading impression.

      Mr. Davis argues that a reasonable reader would have seen the inaccurate and garbled address entry, noted the seriousness of the offenses, and concluded that something must have been off about the report. Furthermore, he says that the "self check" notation on the report tends to indicate reckless procedures because the report was provided not to Mr. Davis but to a prospective employer. These factors alone, he says, should be enough to create a triable issue of fact on whether Direct Screening satisfied the statutory requirements. We get the point, but under Third Circuit law, these errors do not render the report inaccurate or misleading enough to make out a claim for negligent non-compliance with § 1681e(b), nor is it apparent how those errors trace to the injury. *Bibbs*, 43 F.4th at 342.

7

## III.  Conclusion

Because there is no dispute of material fact that Direct Screening's report on Mr. Davis was neither inaccurate nor misleading, we are constrained to enter summary judgment against Mr. Davis notwithstanding his unfortunate circumstances.